RECEIVED
IN LAKE CHARLES, LA
AUG 2 3 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LAURENCE TOMASIK | : | DOCKET NO. 2:11 CV 241 |
| VS. | : | JUDGE MINALDI |
| UNITED STATES | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [Doc. 11], filed by the defendant, the United States of America. The motion is unopposed.[1]

### FACTS

On November 1, 2007, the plaintiff, Laurence Tomasik, was examined by Dr. Carisa Torres-Vasquez at the Jennings VA Clinic for swelling in his right foot and ankle, which he had twisted about five days prior.[2] Dr. Torres-Vasquez ordered an x-ray of the ankle, which was taken on November 16, 2007 at the Alexandria VAMC.[3] On November 21, 2007, Dr. James R. Simon notified Mr. Tomasik that the x-ray showed a fracture of the fifth metatarsal bone.[4] At that time, Dr. Simon directed Mr. Tomasik to wrap the foot in an ace bandage but did not

---

[1] The plaintiff, Laurence Tomasik, filed a motion to extend his deadline to file a Response from May 15, 2012 to May 25, 2012, which the court granted on May 12, 2012. As of the date of this Memorandum Ruling, no response has been filed.

[2] Compl. § IV, p. 2 [Doc. 1].

[3] *Id.*

[4] *Id.* at 2-3.

1

recommend any further treatment.[5]

On January 18, 2008, Mr. Tomasik was examined by Dr. Joseph Hoffman, Jr. at the Orthopedic Clinic of the Alexandria VAMC.[6] Dr. Hoffman opined that Mr. Tomasik's fracture had healed but advised Mr. Tomasik to limit his activity.[7]

On February 20, 2008, Mr. Tomasik underwent a stress test at the Alexandria VAMC, pursuant to the orders of Dr. Torres-Vasquez.[8] Mr. Tomasik alleges that he notified the clinician that he had recently been treated for a fractured foot and it that was still causing him pain.[9] The clinician contacted Dr. Torres-Vasquez, who allegedly directed the clinician to complete the test anyway.[10] Mr. Tomasik avers that during the test, he felt something in his foot pop, and the foot immediately began to hurt. He discontinued the test at that time.[11]

On May 29, 2008, Mr. Tomasik sought additional treatment at the podiatry clinic in the Dr. Michael DeBakey Veterans Hospital in Houston, Texas.[12] An x-ray taken on that date showed a fracture and re-fracture of his right foot in the same location.[13] Mr. Tomasik alleges that he has continued to suffer pain in his right foot since that time and has developed a

---

[5] *Id.* at 3.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at 4.

[12] *Id.*

[13] *Id.*

permanent disability.[14] He further alleges that x-rays and MRIs of the foot taken in early 2009 showed deformities due to "[m]ultiple old healed fractures" which could require extensive surgery to correct.[15]

On December 18, 2008, Mr. Tomasik filed a claim with the United States Department of Veterans Affairs, alleging that Dr. Torres-Vasquez, Dr. Simon, and Dr. Hoffman failed to properly diagnose and treat his injury.[16] The Department of Veteran Affairs denied the claim on August 11, 2010, and Mr. Tomasik filed the instant lawsuit on February 11, 2011.[17] He asserts that the United States is liable for injuries he incurred as a result of the allegedly substandard treatment he received at the Jennings VA Clinic and the Alexandria VAMC under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*[18]

The United States now moves for summary judgment dismissing Mr. Tomasik's complaint. It argues that Mr. Tomasik cannot carry his burden of proving any of the essential elements of his malpractice claim because he has not designated a medical expert.[19]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex*

---

[14] *Id.*

[15] *Id.*

[16] *Id.* § III, p. 2.

[17] *Id.*

[18] *Id.* § V, pp.4-5.

[19] Def.'s Mem. in Supp. of Mot. for Summ. J. 10 [Doc. 11-1].

3

*Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party…" *Id.*

## ANALYSIS

The FTCA makes the United States liable for "personal injury or death caused by the negligent or wrongful act[s]" of federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b). The statute imposes liability in accordance with "the law of the place where the act or omission occurred." 28 U.S.C. § 2674. Because the acts or omissions forming the basis of Mr. Tomasik's complaint occurred in Louisiana, Louisiana law controls.

In Louisiana medical malpractice actions, a plaintiff must prove the following:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians … licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances …;

> (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
>
> (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred. La. Rev. Stat. § 9:2794(A).

The United States argues that Mr. Tomasik cannot carry his burden of proof with respect to any element of his malpractice claim because he has not designated any expert witness who will testify on his behalf. The scheduling order for this case required Mr. Tomasik to furnish the name and written report of any expert witness he intended to call to the United States by May 16, 2012 [Doc. 10]. According to the United States, Mr. Tomasik has not designated any expert witnesses, nor has he provided any expert reports.[20] Rather, he has stated that "the only expert witnesses [he] plans to call at the trial of this matter are the healthcare providers he has seen at the various V.A. Clinics" identified in his complaint.[21] However, he has not provided any evidence that the testimony of any of these physicians will support his claims.

The court agrees that expert testimony is required to establish the first two elements of Mr. Tomasik's malpractice claim. Under Louisiana law, "[e]xpert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony." *Samaha v. Rau*, 07-1726, pp. 5-6 (La. 2/26/08); 997 So.2d 880, 884 (citing *Pfiffner v. Correa,* 1994-0924, 1994-0963, 1994-0992 (La.10/17/94), 643 So.2d 1228)). Examples of obvious negligence which require no expert testimony to demonstrate the physician's fault include "fracturing a leg during examination, amputating the wrong arm,

---

[20] Def.'s Mot. to Continue Trial ¶ 4 [Doc. 17].

[21] Def.'s Mot. for Summ. J. Ex. A, p. 3 [Doc. 11-4].

dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body." *Pfiffner*, 643 So.2d at 1234.

It is clear that the malpractice alleged in this case is not so egregious as to permit a lay person to infer negligence without the guidance of expert testimony. Mr. Tomasik complains that Drs. Torres-Vasquez, Simon, and Hoffman acted negligently in failing to properly and timely diagnose his fracture, failing to properly treat his condition, failing to timely refer him to a podiatry specialist, and ignoring his complaints of ongoing pain in requiring him complete the stress test.[22] He also alleges, however, that his foot was x-rayed and diagnosed several weeks after his first visit to the VA Clinic in Jennings, that he was diagnosed with a fracture less than a week later, and that Dr. Simon recommended that he wrap the foot in an ace bandage at that time. It is not patently obvious that any of these actions fell below the appropriate standard of care or that it was necessary to refer Mr. Tomasik to a podiatry specialist for an apparently minor fracture immediately.

Moreover, it is not obvious that Dr. Torres-Vasquez acted negligently in ordering the stress test despite Mr. Tomasik's recent injury. It would be impossible for a lay person to determine whether the need for the test outweighed the risks of performing it without the help of expert testimony. In sum, the court finds that Mr. Tomasik has not provided sufficient evidence to create a genuine issue of material fact as to the first two elements of his malpractice claim.

Expert testimony is also necessary to establish the third element of the claim. In Louisiana, expert testimony on causation is required "in circumstances involving a complex medical condition" where causation is not "evident." *Pfiffner*, 643 So.2d at 1234. The extent to which Mr. Tomasik's impairments resulted from the allegedly negligent actions of his physicians

---

[22] Compl. § V.

6

rather than from his initial injury would not be "evident" to a lay person. Accordingly, the court finds that Mr. Tomasik cannot carry his burden of proving any element of his malpractice claim and that his complaint must be dismissed.

## CONCLUSION

For the reasons stated herein, the United States' Motion for Summary Judgment will be granted, and the plaintiff's complaint will be dismissed.

Lake Charles, Louisiana, this  6  day of  August  2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE